**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 676, INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS, CHAUF-FEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, IND., Respondent.**

**No. 16250.**

United States Court of Appeals Third Circuit.

Argued March 28, 1967.

Decided April 21, 1967.

Allison W. Brown, National Labor Relations Board, Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence J. Sherman, Atty., National Labor Relations Board, on the brief), for petitioner.

Marshall J. Seidman, Philadelphia, Pa. (Seidman & Rome, Philadelphia, Pa., on the brief), for respondent.

Before HASTIE and SEITZ, Circuit Judges, and BODY, District Judge.

## OPINION OF THE COURT

HASTIE, Circuit Judge.

The National Labor Relations Board has asked us to enforce its order finding Teamsters Local 676 guilty of an unfair labor practice in threatening and coercing an employer, Armstrong Cork Co., in an effort to force that employer to assign certain work to the Teamsters rather than to the Glass Bottle Blowers Association, another union to which the Board has assigned the work in dispute at the conclusion of a proceeding under section 10(k) of the National Labor Relations Act, as amended.

■ The alleged coercion is said to be evidenced by a letter, written after the jurisdictional dispute arose, from the President of the Teamsters local to the employer stating that the local "would instruct our members * * * to go on strike to compel the company to let them continue to perform the work" in question if they should be deprived of it. True, this letter was written shortly before the section 10(k) determination and award. But in the award the Board directed the Teamsters local to notify the Regional Director in writing whether or not it would refrain from the coercive action which already had been threatened to retain the work the Board was assigning to the Glass Bottle Blowers. The Teamsters failed to give any such assurance. On the other side, there is no evidence, not even a contention, that the earlier threat of the Teamsters had been withdrawn. In these circumstances, we think the Board was justified in treating the threat of a strike if the work should be taken from the Teamsters as a continuing one.

On the merits of the case, the respondent union asks us to find that the Board's reassignment of disputed work from its members to the Glass Bottle Blowers is, on the record, unreasonable and arbitrary. However, in our view, the facts are such that reasonable men performing the function of the Board under section 10(k) might have assigned the work to either of the competing unions without being guilty of arbitrary or patently unjust action.

■ The disputed work is the transportation of pallets loaded with cartons of warehouse-bound glassware over a distance less than 100 feet from a point adjacent to the cooling ovens where manufacturing is completed to warehouse trailers and returning empty pallets, as well as the conveying of packing material, to the point of packing and first loading.

Before 1964, the movement of glassware was accomplished in this way. Production workers, members of the Glass Bottle Blowers, packed the glassware in cartons at the point where it came out of the cooling ovens, loaded the cartons on pallets and transported each loaded pallet by a wheeled hand-transporter to a nearby point within the packing area. Teamsters, using forklift trucks, then picked up the loaded pallets and conveyed them across a courtyard where they were deposited upon warehouse trailers. Teamsters would then connect the trailers into a train, couple the train to a tractor and drive to the warehouse.

In 1964 two of these operations were combined. After production workers had loaded cartons on pallets alongside the cooling oven, an employee driving a forklift truck would pick up several loaded pallets and transport them to a point near the entrance of the packing area and there deposit them upon a warehouse trailer for inclusion in a warehouse-bound train. Thus, what had been the final handling by the Glass Bottle Blowers and the first handling by the Teamsters became a single operation.

The Teamsters rely principally on the fact that the operation of and transportation by motorized forklift trucks is traditionally their work and requires the

exercise of special skill which they possess. It is also argued that because the members of their union constitute a small part of the Armstrong work force, their unit would be decimated by the loss of the eight jobs here involved. On the other hand, the very much larger Glass Bottle Blowers local would not be seriously affected by the loss of this work. Admittedly, no employees would be discharged as a result of the assignment of this work to either union.

The Teamsters also point out that when the current procedure was first adopted the employer assigned the work to them. However, the Glass Bottle Blowers counter with the fact that when they challenged this assignment an arbitrator found that they should have the work. The Teamsters refused to participate in this arbitration.

The Glass Bottle Blowers rely principally upon the fact that the packing operations, over which admittedly they have jurisdiction, have traditionally included packing the manufactured product in cartons, loading the cartons on pallets and the first movement of loaded pallets within the packing building to an assembly point where the Teamsters took over for bulk transportation to the warehouse. They contend that the only significant change that has been made is the substitution of a motorized forklift truck for the wheeled hand-transporter as the vehicle utilized for this initial movement of goods within the general packing area. The Glass Bottle Blowers minimize the significance of this vehicular change, arguing that only slight skill, which can easily and quickly be acquired, is needed for the competent management and operation of a forklift truck.

To set out these opposing considerations which had to be weighed in reaching a decision on the assigning of the work in question is to demonstrate that the claim of each union had substantial factual basis and logical support. In these circumstances, we cannot say that a decision assigning the work to either would have been arbitrary or unreasonable. This, in our view, makes it appro-

priate that we refrain from interference with the Board's decision though, given the same facts, we might have concluded that the case for the Teamsters was somewhat more persuasive than the case for the Glass Bottle Blowers.

The order of the Board will be enforced.